UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GIDEON HAMMOND,<br><br>                    Petitioner,<br><br>v.<br><br>JOSIE GASTELO, et al.,<br><br>                    Respondents. | Case No.:  20-cv-00261-BAS (DEB)<br><br>**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS** |

This Report and Recommendation is submitted to United States District Judge Cynthia A. Bashant pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d)(4) and HC.2(a).

Petitioner Richard Gideon Hammond, proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition") challenging his February 21, 2018 conviction and sentence in San Diego Superior Court Case No. SCS280604. Dkt. No. 1. Petitioner raises two grounds for relief: (1) "the trial court improperly and prejudicially admitted the results of the warrantless draw of [Petitioner's] blood"; and (2) "the trial court relied on improper factors in imposing the upper term" for sentencing. *Id.* at 6–7. On March 12, 2020, Respondent filed a Response and lodged the state court record. Dkt. Nos. 4, 5. On June 24, 2020, Petitioner filed a Traverse. Dkt. No. 15. On July 15, 2020, and August 3, 2020, the parties submitted supplemental

briefing. Dkt. Nos. 18, 20. The Court has considered the Petition, Response, Traverse, supplemental briefs, and all supporting documents.

For the reasons set forth below, the Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

## I.     FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal's opinion in *The People of the State of California v. Richard Gideon Hammond* (Dkt. No. 5-13 at 3–5):[1]

> Daniel R. lived in Tijuana and worked as a pizza delivery driver in National City. After working the night shift and helping to close the restaurant, Daniel headed home on his motorcycle around 4:30 a.m. on December 3, 2016.
>
> Around that time, Hammond was driving southbound on Interstate 5 near the U.S.–Mexico border. At 5:12 a.m., a license plate reader at the San Ysidro port of entry captured images of Hammond driving a Mazda sedan in the dark without headlights on. Hammond then made a U-turn on the freeway and began driving north in the southbound lanes. Several witnesses called 911 to report seeing a vehicle driving the wrong direction on the freeway.
>
> Hammond continued driving northbound in the southbound lanes without headlights and in excess of 80 miles per hour for about three minutes. During this time, he traveled about three miles, passed three freeway offramps, and encountered at least one car traveling southbound.
>
> At about 5:18 a.m., when it was "still really dark," Hammond collided with Daniel, causing "an explosion like a ball of fire" that could be felt from the northbound freeway lanes. Daniel suffered multiple catastrophic injuries that led to "instantaneous death."

---

[1]     Absent clear and convincing evidence to the contrary, the Court gives deference to the state courts' factual determinations and presumes them to be correct. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The collision caused Hammond to lose control of his car and collide with a pickup truck that Iris G. was driving southbound with her three children. Iris sustained ongoing back problems and her truck was "a total loss." Iris could not recall at trial whether Hammond's headlights were on at the time of the collision, nor could she recall ever telling officers they were.[2]

CHP Officer Javier Mendoza, who was assigned to patrol the area where the collision occurred, arrived at the scene about 10 minutes after the collision. He saw fire department personnel gathered around Daniel, who was pronounced dead at the scene. Mendoza also saw that other law enforcement personnel had detained Hammond on the freeway median due to his reportedly erratic and uncooperative behavior. Based on the physical evidence at the scene, Mendoza concluded Hammond collided with Daniel nearly head-on while traveling the wrong direction. Hammond was transported by ambulance to a hospital for evaluation and treatment of his injuries, which included a bump on his forehead and bleeding from his mouth and lips. Officer Mendoza rode in the ambulance with him. During this time, Mendoza observed several signs that Hammond was under the influence of a controlled substance: he was agitated and trembling; he had red watery eyes, and a white coating on his lips indicating a dry mouth; his heartrate was elevated; and his short-term memory was impaired. Based on these observations, Mendoza placed Hammond under arrest for suspicion of driving under the influence.

In the ambulance, Officer Mendoza conducted limited field sobriety testing on Hammond and obtained his consent to a blood draw. A toxicologist testified at trial that analysis of Hammond's blood sample indicated the presence of marijuana at levels higher than her lab typically sees, which indicated Hammond had recently smoked marijuana. The toxicologist explained marijuana can act as a stimulant, depressant, or hallucinogen, depending on the user. She also explained that marijuana can

---

[2] A California Highway Patrol (CHP) officer who interviewed Iris after the collision testified at trial that his interview notes indicate Iris told him Hammond's headlights were on. Apart from these notes, the officer had no independent recollection of Iris's statement in this regard.

> cause disorientation or confusion while driving, including that a driver "may not notice . . . if [his or her] headlights are on or off." The toxicologist added that the effects of marijuana can be felt "from a matter of hours to a period of days after use."

Dkt. No. 5-13 at 3–5.

## II.   PROCEDURAL BACKGROUND

On December 7, 2016, the San Diego County District Attorney's Office filed a felony Complaint in the San Diego County Superior Court charging Petitioner with one count of Vehicular Manslaughter Non-Alcohol with Gross Negligence in violation of California Penal Code § 192(c)(1). Dkt. No. 5-1 at 7–9.[3] On January 24, 2018, Petitioner, through counsel, filed a motion pursuant to California Penal Code § 1538.5(i) to suppress all evidence obtained from the warrantless blood draw. Dkt. No. 5-2 at 7–11. On February 12, 2018, the Superior Court held a hearing and heard testimony from the officer who obtained Petitioner's consent to the blood draw. Dkt. No. 5-4 at 26–39; 42–45. The Superior Court found Petitioner voluntarily consented to the blood draw and denied Petitioner's motion. *Id.* at 69.

On February 21, 2018, a jury convicted Petitioner of vehicular manslaughter with gross negligence and found true the allegation that Petitioner personally inflicted great bodily injury in the commission of the offense. Dkt. No. 5-8 at 72. On April 25, 2018, the Superior Court imposed a six-year sentence. Dkt. No. 5-9 at 37.

On August 2, 2018, Petitioner filed an appeal brief arguing the Superior Court erred by: (1) denying his motion to suppress the evidence derived from the blood draw; and (2) considering irrelevant and improper aggravating factors to impose a six-year, upper term sentence. Dkt. No. 5-10. On May 17, 2019, the California Court of Appeal affirmed

---

[3]   At the August 16, 2017 preliminary hearing, the Superior Court deemed the Complaint an Information. Dkt. No. 5-1.

the judgment. Dkt. No. 5-13 at 2, 24. On June 10, 2019, the California Supreme Court denied Petitioner's petition for review. Dkt. No. 5-15.

On February 11, 2020, Petitioner filed this Petition. Dkt. No. 1. On April 14, 2020, Petitioner filed a Notice of Change of Address and, through his May 19, 2020 motion to appoint counsel, informed the Court of his March 8, 2020 release from California Men's Colony–West. *See* Dkt. Nos. 6, 10 at 3. In light of Petitioner's release, the Court requested additional briefing to address whether Petitioner's challenge to the length of his sentence is moot. Dkt. No. 17. On August 3, 2020, Petitioner responded that he is on parole "under legal supervision by a state agent" and is, therefore, subject to various limitations, including traveling. Dkt. No. 20 at 5.

### III.    STANDARD OF REVIEW

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq*. Under the AEDPA, a federal court will not grant a habeas petition challenging any matter adjudicated on the merits by the state court unless that decision was: (1) contrary to, or involved an unreasonable application of clearly established federal law; or (2) based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

The "contrary to" clause applies if the state court adopted a rule different from Supreme Court cases or decided a case differently than the Supreme Court on a set of materially indistinguishable facts. 28 U.S.C. § 2254(d)(1); *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). The "unreasonable application" clause applies if the state court correctly identified the governing legal principle from Supreme Court decisions, but unreasonably applied those principles to the facts of a particular case. 28 U.S.C. § 2254(d)(2); *Bell*, 535 U.S. at 694. A merely incorrect or erroneous decision does not satisfy the "unreasonable application" clause. *Id*. at 694 ("An unreasonable application is different from an incorrect one.").

In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; instead, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) ("Where, as here, the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004) ("Extraordinarily deferential to the state courts, the unreasonable application clause does not trigger habeas relief unless the state court's analysis was objectively unreasonable.") (internal quotations omitted).

Where there is no reasoned decision from the highest state court to which the claim was presented, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

## IV.  DISCUSSION

Petitioner raises two claims for relief. First, he contends the Superior Court erred by denying his motion to suppress his blood draw results. Second, Petitioner contends the Superior Court erred by considering irrelevant aggravating factors to impose an upper sentencing term. Neither claim entitles Petitioner to habeas relief.

### A. Petitioner Is Not Entitled to Habeas Relief on His Claim Challenging the Denial of His Motion to Suppress Evidence

In his first claim, Petitioner contends the police had "ample" time to procure a warrant and he lacked the ability to consent due to the effects of the collision, administration of antipsychotic medication, and impaired consciousness. Dkt. No. 1 at 26–27. In response, Respondent argues that Petitioner's Fourth Amendment claim is barred under the rule set forth in *Stone v. Powell*, 428 U.S. 465 (1976).

In *Stone*, the Supreme Court held that "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence [was] obtained in an

unconstitutional search or seizure. . . ." *Id.* at 494; *see also Locks v. Summer*, 703 F.2d 403, 408 (9th Cir. 1983) (finding evidence obtained in an illegal search that was alleged to be improperly admitted at trial fell squarely within the *Stone* rule: "In *Stone*, the Supreme Court held that Fourth Amendment claims are not cognizable in habeas proceedings."). Instead, the "relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

California Penal Code § 1538.5 allows criminal defendants to move to suppress evidence obtained in violation of the Fourth Amendment. This statute, therefore, provides for "full and fair litigation" of Fourth Amendment claims. *See Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) ("Under California law, a defendant can move to suppress evidence on the basis that it was obtained in violation of the fourth amendment.") (citing Cal. Pen. Code § 1538.5); *Esparza v. Schomig*, No. 09-cv-01974-L (JMA), 2010 WL 5535756, at *5–6 (S.D. Cal. Nov. 19, 2010) (finding § 1538.5 "provides criminal defendants with an opportunity for 'full and fair litigation' of their Fourth Amendment claims, regardless of whether the criminal defendant litigates the issue."), *report and recommendation adopted*, 2011 WL 42790, at *1 (Jan. 6, 2011).

Here, Petitioner does not contend he was not provided a full and fair opportunity to litigate his Fourth Amendment claim. He claims only that it was wrongly decided. Dkt. No. 1 at 33–44. This does not present a viable claim under *Stone*. The Court, therefore, recommends denial of Petitioner's first ground for habeas relief.

**B. Petitioner Is Not Entitled to Habeas Relief on His Claim Challenging His Sentence**

Petitioner's second claim is that the Superior Court abused its discretion by imposing an upper term sentence. Dkt. No. 1 at 45. Petitioner claims that the Superior Court erroneously based its sentence "upon facts that do not render the offense distinctively worse

than it would have otherwise been" and "that constitute elements or common characteristics of the offense." *Id*. at 48.

### 1.     Petitioner's sentencing claim is not moot

As a preliminary matter, the Court addresses whether Petitioner's challenge to his sentence is moot. Petitioner was incarcerated at California Men's Colony State Prison–West when he filed this Petition. He is now released on parole. Respondent contends Petitioner's sentencing claims are, therefore, moot. Dkt. No. 18 at 1–2.

Release on supervision, however, does not moot a sentencing appeal. *See Mujahid v. Daniels,* 413 F.3d 991, 994–95 (9th Cir. 2005) (holding appeal not moot despite intervening release of inmate into supervised release because court could reduce period of supervised release); *see also Gunderson v. Hood,* 268 F.3d 1149, 1153 (9th Cir. 2001) (ruling the "possibility" the sentencing court might reduce a term of supervised release prevented a petition from being moot); *United States v. Verdin,* 243 F.3d 1174, 1178 (9th Cir. 2001) (holding a defendant on supervised release retained a personal stake in the appeal of his sentence because, if he prevailed, "he could be resentenced to a shorter period of supervised release").

Courts have extended and applied the Ninth Circuit's holdings to state habeas claims. *See Hodges v. Newland*, 172 F. Supp. 2d 1245, 1248 (N.D. Cal. 2001) ("Although [petitioner] has completed the institutional phase of his sentence, he is now on parole; his parole prevents this case from being moot."); *Smith v. Rackley*, No. 18-cv-005-SVW-LAL, 2019 WL 3209449, at *1 n.3 (C.D. Cal. Mar. 12, 2019) ("Petitioner's release on parole does not moot his Petition. . . . Had Petitioner been successful at the [sentence] hearing he could have received a lesser sentence or been released free of any parole terms."), *report and recommendation adopted*, 2019 WL 3205794, at * 1 (July 15, 2019). The Court, therefore, will reach the merits of Petitioner's sentencing claim.

### 2.     Petitioner's sentencing claim does not pose a federal question

Petitioner contends that the Superior Court abused its discretion in finding that aggravating factors supported an upper-term sentence. Respondent counters, and the Court

agrees, that this is not a viable habeas claim because it does not present a federal constitutional question.

Claims solely involving the interpretation or application of state law are not cognizable on federal habeas review. *Estelle v. McGuire,* 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)). Petitioner does not claim any federal constitutional defect in his sentence. Instead, he argues only that the Superior Court abused its discretion by disregarding mitigating factors and considering only aggravating factors in imposing an upper term. Dkt. No. 1 at 48–55. This claim, however, is not cognizable on federal habeas review. *See Miller v. Vasquez,* 868 F.2d 1116, 1118–19 (9th Cir. 1989) (Application of "California's sentence enhancement provisions is [an unreviewable] question of state sentencing law.").

### 3. *Petitioner's sentence did not violate due process*

A sentencing error may violate due process if the state court misapplied its sentencing laws in an arbitrary or capricious manner. *See Richmond v. Lewis,* 506 U.S. 40, 50 (1992) ("[T]he federal, constitutional question is whether [the sentencing error] is so arbitrary or capricious as to constitute an independent due process . . . violation."). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode,* 41 F.3d 461, 469 (9th Cir. 1994). Nothing fundamentally unfair occurred here.

During the sentencing hearing, the Superior Court considered Petitioner's mitigating evidence, but found it was outweighed by at least one aggravating factor. Dkt. No. 5-9 at 36. The Court of Appeal conducted a detailed analysis of the sentencing judge's findings and determined: "because marijuana use is not an element of vehicular manslaughter with gross negligence, the trial court could properly consider it an aggravating factor." Dkt. No. 5-13 at 23. The Court of Appeal concluded that ample evidence supported at least one aggravating factor set forth under state law, and, therefore, justified imposition of the upper term sentence. *Id*. at 22–23. The state courts' decisions comport with due process.

*See Henderson v. Diaz*, No. 18-cv-09212-PSG-KES, 2019 WL 2164642, at *6 (C.D. Cal. Feb. 28, 2019) ("Even assuming . . . that this factual record shows that the sentencing judge violated PC section 1170(b)'s prohibition against dual use, Petitioner cannot show that his resulting sentence was fundamentally unfair. The trial judge cited numerous other aggravating circumstances . . . [a]ny one of those was legally sufficient to support the trial court's discretionary imposition of the upper term."), *report and recommendation adopted*, 2019 WL 2162993, at *1 (May 16, 2019).

Although Petitioner claims that the Superior Court impermissibly relied on two other factors, *see* Dkt. No. 1 at 54, the California Supreme Court has held that "under the [Determinate Sentencing Law,] the presence of one aggravating circumstance renders it lawful for the trial court to impose an upper term sentence." *People v. Black*, 161 P.3d 1130, 1140 (Cal. 2007). Moreover, "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court." Cal. Penal Code § 1170(b); *see Lloyd v. Gonzalez*, No. 11-cv-3321-PJW, 2012 WL 84046, at *3 (C.D. Cal. Jan. 10, 2012) ("Under [the 2007 amendment to California Penal Code § 1170(b)] the trial judge was authorized in its discretion to sentence Petitioner to the upper term without any aggravating factors being proven to a jury or admitted by Petitioner."); *Juarez v. Allison*, No. 10-cv-10001-GW-E, 2011 WL 3654449, at *5 (C.D. Cal. Mar. 22, 2011) (ruling pursuant to amended version of § 1170(b), a trial court need not make any findings concerning factors in aggravation or mitigation to impose a selected term). Petitioner's sentence was within the maximum set out in the statute of conviction, Cal. Penal Code §§ 192(c)(1), 193(c)(1).

In sum, the Superior Court's imposition of an upper term sentence was not arbitrary and capricious. To the contrary, it complied with California law. Petitioner's sentence, therefore, was not fundamentally unfair and did not offend due process.

10
20-cv-00261-BAS (DEB)

## V. CONCLUSION & RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying Petitioner's Petition of Writ of Habeas Corpus.

**IT IS ORDERED** that no later than **October 27, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties by **November 6, 2020**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated: October 5, 2020

_____
Honorable Daniel E. Butcher
United States Magistrate Judge